ANA CRISTINA DAGRACA, ADMINISTRATRIX
(ESTATE OF JOSE V. CANCELA), ET AL. *v.*
KOWALSKY BROTHERS, INC., ET AL.

MANUEL AFONSO, ADMINISTRATOR (ESTATE OF
ANTONIO AFONSO), ET AL. *v.* KOWALSKY
BROTHERS, INC., ET AL.
(AC 27021)

Schaller, DiPentima and McLachlan, Js.

Argued February 15—officially released April 24, 2007

*William M. Bloss*, with whom was *Jan A. Marcus*, for the appellants (plaintiffs).

*Robert C. E. Laney*, with whom was *Kristine F. Pond*, for the appellees (defendants).

*Opinion*

McLACHLAN, J. The plaintiffs, Ana Cristina DaGraca, as administratrix of the estate of Jose V. Cancela; Marcelina V. Cancela; Manual Afonso, as administrator of the estate of Antonio Afonso; and Maria F. Afonso, jointly appeal from the summary judgments rendered by the trial court in favor of the defendants, Kowalsky Brothers, Inc.; Edward Kowalsky; Robert E. Grant, as executor of the estate of Paul Kowalsky;[1] and Joseph Jaykus. On appeal, the plaintiffs claim that the court improperly concluded that their actions were barred by the exclusive remedy provision of the Workers' Compensation Act (act), General Statutes § 31-275 et seq., and did not fall within the substantial certainty exception as set forth in *Suarez* v. *Dickmont Plastics Corp.*, 229 Conn. 99, 639 A.2d 507 (1994) (*Suarez I*). We affirm the judgments of the trial court.

The following facts, gathered from the affidavits, deposition testimony and the procedural history of the case, are relevant to the disposition of the plaintiffs'

---

[1] This action was commenced against Paul Kowalsky, who died on January 29, 2002. Grant, as executor of his estate, was substituted as a defendant.

appeal. The defendant corporation was a general contractor engaged in the business of excavation and construction. The decedents, Jose Cancela and Antonio Afonso, were employees of the defendant corporation. In connection with a project involving the abandonment of manholes and the decommissioning of a twenty-four inch sewer pipe on property in Westport, the decedents were assigned the tasks of removing the sedimentation from certain manholes and sealing the sewer pipe intake and outflow openings with bricks and mortar. On July 23, 1998, the decedents were asphyxiated shortly after descending into one of the manholes. In January, 2000, the fiduciary of the estate of Jose Cancela commenced a wrongful death action against the defendants in which Marcelina Cancela, the spouse of the decedent, claimed loss of consortium damages. In May, 2000, the fiduciary of the estate of Antonio Afonso commenced a separate wrongful death action against the defendants in which Maria Afonso, the spouse of the decedent, claimed loss of consortium damages.

On November 3, 2003, the defendants filed motions for summary judgment against the plaintiffs, claiming that their actions were barred by the exclusivity provisions set forth in General Statutes §§ 31-284,[2]

---

[2] General Statutes § 31-284 (a) provides: "An employer who complies with the requirements of subsection (b) of this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained, but an employer shall secure compensation for his employees as provided under this chapter, except that compensation shall not be paid when the personal injury has been caused by the wilful and serious misconduct of the injured employee or by his intoxication. All rights and claims between an employer who complies with the requirements of subsection (b) of this section and employees, or any representatives or dependents of such employees, arising out of personal injury or death sustained in the course of employment are abolished other than the rights and claims given by this chapter, provided nothing in this section shall prohibit any employee from securing, by agreement with his employer, additional compensation from his employer for the injury or from enforcing any agreement for additional compensation.

31-293a[3] and 52-555d.[4] The plaintiffs filed objections, claiming the existence of a genuine issue of material fact sufficient to bring their claims within the substantial certainty exception to the exclusivity provisions. The court heard argument and issued its memorandum of decision on September 28, 2005, granting the defendants' motions. This joint appeal followed.

The plaintiffs claim on appeal that the court improperly rendered summary judgment in favor of the defendants because the plaintiffs presented evidentiary facts in their opposition to show that (1) the defendant corporation knew that the dangers it intentionally created were substantially certain to result in the deaths of the decedents and (2) the actions of the individual defendants were wilful or malicious. The plaintiffs argue that the defendants knew about the dangers of confined space entry, which includes the descent into an oxygen deficient manhole, and that the defendant corporation deliberately failed to provide its employees with training or protective equipment to work in such a dangerous environment. The plaintiffs claim that the defendants had to believe that the decedents' deaths were substantially certain to occur when they ordered the decedents to enter the untested manhole under those circumstances.

---

[3] General Statutes § 31-293a provides in relevant part: "If an employee or, in case of his death, his dependent has a right to benefits or compensation under this chapter on account of injury or death from injury caused by the negligence or wrong of a fellow employee, such right shall be the exclusive remedy of such injured employee or dependent and no action may be brought against such fellow employee unless such wrong was wilful or malicious or the action is based on the fellow employee's negligence in the operation of a motor vehicle as defined in section 14-1. . . ."

[4] General Statutes § 52-555d provides: "No action with respect to any claim or cause of action for loss of consortium shall be brought by one spouse against an employer of the other spouse if such other spouse is entitled to receive, is receiving or has received benefits pursuant to chapter 568."

Chapter 568 of the General Statutes comprises the act.

Because the court's decision on a motion for summary judgment is a legal determination, our review on appeal is plenary. *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 572–73, 893 A.2d 486, cert. denied, 278 Conn. 912, 899 A.2d 38 (2006). "The law governing summary judgment and the accompanying standard of review are well settled. Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . .

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to a judgment as a matter of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . .

"It is frequently stated in Connecticut's case law that, pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Moreover, [t]o establish

the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact." (Citations omitted; internal quotation marks omitted.) *Rockwell* v. *Quintner*, 96 Conn. App. 221, 227–29, 899 A.2d 738, cert. denied, 280 Conn. 917, 908 A.2d 538 (2006).

Here, the complaints in both cases alleged that the decedents' deaths were caused by one or more wilful or serious acts of the defendant corporation.[5] In essence, the plaintiffs claimed that the defendant corporation failed to provide appropriate training, warnings,

---

[5] In the amended complaint filed by the fiduciary of the estate of Jose Cancela, the wilful or serious acts were alleged to be as follows:

"(a) held itself out as a general contractor capable of properly decommissioning a potentially toxic sewer manhole when it knew that it was not qualified to do so;

"(b) failed to instruct plaintiff's decedent in the proper methods of decommissioning the toxic sewer manhole;

"(c) failed to warn plaintiff's decedent of the dangerous nature of the toxic sewer manhole;

"(d) failed to warn plaintiff's decedent that the toxic sewer manhole could not be worked in safely absent utilizing the appropriate safety devices;

"(e) failed to provide plaintiff's decedent with ventilation devices mandated by [the Occupational Safety and Health Act, 29 U.S.C. § 651 et seq.] in order to work in the confined space of the toxic sewer manhole;

"(f) failed to provide the plaintiff's decedent with monitoring devices to determine the level of oxygen and other gasses in the toxic sewer manhole;

"(g) failed to provide any self contained breathing apparatus to the plaintiff's decedent for use in the toxic sewer manhole;

"(h) failed to ascertain the level of oxygen or other gasses in the toxic sewer manhole prior to ordering plaintiff's decedent into the toxic sewer manhole;

"(i) failed to take into account in ordering plaintiff's decedent to work in the toxic sewer manhole that the manhole was constructed over an abandoned landfill that contained toxic substances and other debris."

The allegations against the defendant corporation are essentially identical in the complaint filed by the fiduciary of the estate of Antonio Afonso.

safety equipment and protective apparatus to the decedents before ordering them to work in a confined space, i.e., a toxic sewer manhole.[6] The same omissions, claimed to constitute wilful or malicious misconduct, are alleged against the individual defendants.

It is not disputed that the decedents were employees of the defendant corporation at the time they entered the oxygen deficient manhole on July 23, 1998. It also is not disputed that the defendant corporation carried workers' compensation insurance at the time of the incident and that its insurer has paid workers' compensation benefits to the decedents' estates. "The purpose of the [workers'] compensation statute is to compensate the worker for injuries arising out of and in the course of employment, without regard to fault, by imposing a form of strict liability on the employer. . . . Under typical workers' compensation statutes, employers are barred from presenting certain defenses to the claim for compensation, the employee's burden of proof is relatively light, and recovery should be expeditious. In a word, these statutes compromise an employee's right to a common law tort action for work related injuries in return for relatively quick and certain compensation. . . . The purposes of the act itself are best served by allowing the remedial legislation a reasonable sphere of operation considering those purposes." (Citations omitted; internal quotation marks omitted.) *Mingachos* v. *CBS, Inc.*, 196 Conn. 91, 97, 491 A.2d 368 (1985).

Section 31-284 (a), the exclusivity provision of the act, provides in relevant part that "[a]n employer who

---

[6] There is nothing in the record to support the statement that the decedents actually were ordered to enter the manhole. Transcripts of the testimony from various employees indicated that the tasks of removing the sedimentation from the manhole and decommissioning the sewer pipe were assigned to the decedents. They were free to choose the methods of accomplishing those tasks, and it was not always necessary to enter a manhole in order to clean it out.

complies with the requirements of . . . this section shall not be liable for any action for damages on account of personal injury sustained by an employee arising out of and in the course of his employment or on account of death resulting from personal injury so sustained . . . ." In *Jett* v. *Dunlap*, 179 Conn. 215, 425 A.2d 1263 (1979), our Supreme Court recognized a narrow exception to the exclusivity provision for intentional torts that an employer has committed on an employee. In *Mingachos* v. *CBS, Inc.*, supra, 196 Conn. 100, however, the court expressly declined to extend judicially the *Jett* exception to include employee injuries that resulted from the employer's intentional, wilful or reckless violations of safety standards established pursuant to federal and state laws, such as the federal Occupational Safety and Health Act (OSHA), 29 U.S.C. § 651 et seq. Because the legal justification for the exception is the nonaccidental character of the injury, the exception "cannot . . . be stretched to include accidental injuries caused by the gross, wanton, wilful, deliberate, intentional, reckless, culpable, or malicious negligence, breach of statute, or other misconduct of the employer short of genuine intentional injury." (Citations omitted; internal quotation marks omitted.) *Mingachos* v. *CBS, Inc.*, supra, 108.

The intentional tort exception was expounded further in *Suarez I*, supra, 229 Conn. 99, in which the court stated that "intent refers to the consequences of an act . . . [and] denote[s] that the actor desires to cause [the] consequences of his act, or that he believes that the consequences are substantially certain to follow from it. . . . A result is intended if the act is done for the purpose of accomplishing such a result or with knowledge that to a substantial certainty such a result will ensue." (Citation omitted; internal quotation marks omitted.) Id., 108. In *Suarez I*, the plaintiff alleged that his severe injuries resulted from his employer's orders

to clear hot molten plastic out of a plastic molding machine while the machine was in operation. The plaintiff claimed that he was told that he could not employ a safer method of cleaning the machine, that he had to reach into the machine to clean it without turning the machine off and that his employment would be terminated if he failed to follow his employer's directions. In reversing the trial court's granting of the defendant's motion for summary judgment, our Supreme Court held that a jury could reasonably infer "that the defendant's conduct constituted more than a mere failure to provide appropriate safety or protective measures, and that the plaintiff's injury was the inevitable and known result of the actions required of him by the defendant." Id., 111.

In *Suarez* v. *Dickmont Plastics Corp.*, 242 Conn. 255, 698 A.2d 838 (1997) (*Suarez II*), the court restated the substantial certainty test set forth in *Suarez I*. The court concluded that a plaintiff employee could establish an intentional tort claim and overcome the exclusivity bar of the act by proving "either that the employer actually intended to injure the plaintiff (actual intent standard) or that the employer intentionally created a dangerous condition that made the plaintiff's injuries substantially certain to occur (substantial certainty standard)." Id., 257–58. "The substantial certainty test provides for the intent to injure exception to be strictly construed and still allows for a plaintiff to maintain a cause of action against an employer where the evidence is sufficient to support an inference that the employer deliberately instructed an employee to injure himself." (Internal quotation marks omitted.) Id., 258.

Subsequent decisions by this court have elaborated further on the exception to the exclusivity provision of the act. "Failure to take affirmative remedial action, even if wrongful, does not demonstrate an affirmative intent to create a situation that causes personal injury." *Melanson* v. *West Hartford*, 61 Conn. App. 683, 689, 767

A.2d 764, cert. denied, 256 Conn. 904, 772 A.2d 595 (2001). "Under either [the actual intent or the substantial certainty] theory of employer liability, however, the characteristic element [of wilful misconduct] is the design to injure either actually entertained or to be implied from the conduct and circumstances. . . . Not only the action producing the injury but the resulting injury also must be intentional." (Internal quotation marks omitted.) Id., 688; see also *Morocco* v. *Rex Lumber Co.*, 72 Conn. App. 516, 523, 805 A.2d 168 (2002).

With the foregoing principles in mind, we turn to the present cases. As previously noted, the plaintiffs are proceeding under the substantial certainty test of the intentional tort exception to the exclusivity provision of the act. The defendants, in filing their motions for summary judgment, have claimed that no genuine issue of material fact exists to support the plaintiffs' causes of action. In addition to the motions and memoranda in support thereof, the defendants filed affidavits by the individual defendants, an affidavit by Joseph Kowalsky, Jr., in his capacity as president of the defendant corporation, and excerpts from deposition transcripts.

In his affidavit, Joseph Kowalsky, Jr., stated that prior to July, 1998, the defendant corporation did very little work involving existing manholes, that projects involving sewers and manholes primarily consisted of the installation of new sewer lines and manholes, that he was unaware that a manhole was considered a " 'confined space' " under OSHA regulations, that he was unaware of the various OSHA regulations pertaining to work in confined spaces and that he had no knowledge that the manhole in which the decedents were working was oxygen deficient or that the atmosphere in the manhole was dangerous. The affidavits of the individual defendants also stated that they were unaware that the manhole was or could become oxygen deficient or that the atmosphere in the manhole was dangerous.

In opposition to the defendants' motions, the plaintiffs submitted memoranda, excerpts from deposition transcripts and copies of exhibits marked at those depositions. The plaintiffs do not claim that the defendants created the oxygen deficient atmosphere in the manhole or that the defendants knew that the manhole was oxygen deficient at the time that the decedents entered it on July 23, 1998. Additionally, they have not submitted any documentation that demonstrated that the defendant corporation or the individual defendants had actual knowledge of the dangers of confined spaces or that they were aware of the OSHA regulations pertaining to working in confined spaces.[7] Instead, they rely on the deposition testimony of their expert, Stephen Estrin, who concluded that the defendants had to have known of the dangers of untested manholes and the subject OSHA regulations. He reaches that conclusion because the defendants had been in the construction business for several years, had been involved with public works projects and, consequently, had to have been familiar with OSHA requirements. Further, because the defendants had to have known about the dangers of manholes, and because they did not comply with OSHA regulations and failed to train the decedents or provide them with protective equipment, it was the expert's opinion that the decedents' deaths were substantially certain to occur.

[7] In opposing the defendants' motions for summary judgment, the plaintiffs attached copies of minutes from safety meetings held in June, 1996, and November, 1997, in connection with prior projects, in which the topic of confined spaces had been discussed. The material provided indicated that a foreman of the defendant corporation had attended. The plaintiffs claim that the existence of those minutes, and the obligation to share that information with corporate officers and employees of the defendant corporation, demonstrated that the defendants had knowledge of the dangers of confined space entry and the existence of OSHA regulations regarding such entry. Nothing was submitted by the plaintiffs, however, to show that the information actually was shared or that the foreman was an "alter ego" of the defendant corporation. See *Jett* v. *Dunlap*, supra, 179 Conn. 219–20.

The critical flaw in the plaintiffs' arguments, including the conclusion of the plaintiffs' expert witness as to the substantial certainty of the decedents' deaths, is the absence of any information as to the probability that any given manhole will be oxygen deficient. In the excerpts from Estrin's deposition testimony, he admitted that he was unaware of any statistics or data concerning the frequency of worker injuries from entry into confined spaces without required safety measures and apparatus. He indicated that he was aware of the deposition testimony of another witness, a former laborer who went into manholes, who stated that he had made more than 100 confined space entries without harm. Estrin doubted that all of those entries were truly confined space entries but acknowledged that those entries must have included some manholes and that the former laborer had escaped injury.

"Although the court must view the inferences to be drawn from the facts in the light most favorable to the party opposing the motion . . . a party may not rely on mere speculation or conjecture as to the true nature of the facts to overcome a motion for summary judgment. . . . A party opposing a motion for summary judgment must substantiate its adverse claim by showing that there is a genuine issue of material fact together with the evidence disclosing the existence of such an issue." (Internal quotation marks omitted.) *Scheirer* v. *Frenish, Inc.*, 56 Conn. App. 228, 232–33, 742 A.2d 808 (1999), cert. denied, 252 Conn. 938, 747 A.2d 3 (2000). "Although an affidavit by an expert may be considered in opposition to a motion for summary judgment, conclusory affidavits, even from expert witnesses, do not provide a basis on which to deny such motions." *Morales* v. *Kagel*, 58 Conn. App. 776, 781, 755 A.2d 915 (2000).

The plaintiffs failed to demonstrate that the defendants knew of the dangers of confined space entry.

They also failed to show that it is probable that an existing manhole will be oxygen deficient or the degree of that expected deficiency. No evidence was presented that indicated that the defendants' actions were committed with the purpose of causing injury. It therefore cannot be said that the decedents' deaths were substantially certain to occur when they descended into an untested manhole without safety equipment on July 23, 1998.[8]

The record before us on these motions for summary judgment does not disclose that the plaintiffs put into dispute the statements of the defendants in their affidavits that each had no intent to injure the decedents. Although the defendants' alleged omissions may constitute negligence, gross negligence or even recklessness, those allegations fail to meet the high threshold of substantial certainty. Accordingly, we conclude that the plaintiffs' claims were barred by the exclusivity provisions of the act and that the court properly granted the defendants' motions for summary judgment.

The judgments are affirmed.

In this opinion the other judges concurred.

---

[8] The allegations against the individual defendants are identical to the allegations against the defendant corporation. In the counts against the individual defendants, the plaintiffs characterize their actions as "wilful or reckless misconduct." Actually, by statute, General Statutes § 31-293a, the conduct would have to be "wilful or malicious" in order to fall within the exception to the exclusivity provision. In any event, no separate analysis is

necessary. The plaintiffs have failed to demonstrate that the alleged conduct was "designed to cause the injury that resulted." (Internal quotation marks omitted.) *Nolan* v. *Borkowski,* 206 Conn. 495, 501, 538 A.2d 1031 (1988).