DAPHNE MCKINNEY *v.* BRIAN CHAPMAN
(AC 27579)

DiPentima, McLachlan and Stoughton Js.

Argued April 17—officially released August 28, 2007

*W. Martyn Philpot, Jr.*, with whom, on the brief, was *Marc L. Glenn*, for the appellant (plaintiff).

*David C. Nelson*, assistant attorney general, with whom were *Jane B. Emons*, assistant attorney general, and, on the brief, *Richard Blumenthal*, attorney general, for the appellee (defendant).

*Opinion*

McLACHLAN, J. The plaintiff, Daphne McKinney, appeals from the summary judgment rendered by the trial court in favor of the defendant, Brian Chapman,

her former supervisor. On appeal, the plaintiff claims that the court improperly determined that the defendant was absolutely privileged to publish allegedly defamatory statements about her contained in two documents that he had written and prepared.[1] We affirm the judgment of the trial court.

The following procedural history and facts, as taken from the pleadings, affidavits, the court's memorandum of decision and other documentary information, are relevant to our resolution of the issues on appeal. The defendant was the former supervisor of the plaintiff in the ride sharing unit of the department of transportation (department). On July 25, 2001, the plaintiff commenced an action in federal District Court against the department on the basis of alleged discrimination in failing to promote her.[2] In July, 2002, Loretta Radikas, a legislative and administrative adviser for the department, contacted the defendant and informed him that one of the plaintiff's allegations was that she was not doing work because the defendant was not giving her work. Radikas asked for and received an oral response from the defendant in regard to that accusation. In August, 2002, the

[1] The plaintiff also claims that genuine issues of material fact exist regarding her defamation claim, that there is sufficient evidence to infer that the defendant acted with malice to abrogate the immunity provided by General Statutes § 4-165, that the defendant's statements are not protected by a qualified privilege, that her execution of a general release was not binding and preclusive on her claims against the defendant and that her common-law claims of intentional infliction of emotional distress and negligent infliction of emotional distress are supported properly by the record. During oral argument, the plaintiff conceded that her negligent infliction of emotional distress claim was barred by the immunity provided under § 4-165, thereby abandoning this claim. Because our conclusion that the statements of the defendant were absolutely privileged is dispositive of the claims, we do not address the remaining issues.

[2] The plaintiff raised state and federal law claims before the commission on human rights and opportunities and the equal employment opportunity commission, which are two administrative agencies created by state and federal law, respectively, to enact procedures for employment discrimination claims.

defendant wrote a document entitled, "Chronology (Brian Chapman's history of supervising Daphne McKinney)." On or about October 28, 2002, the defendant wrote a second document entitled, "Brian Chapman's response to Daphne McKinney's claim that she was not working because Brian 'didn't give her any work.'" The plaintiff learned about the chronology and response when the defendant mentioned them during his deposition in the federal litigation.[3]

On December 11, 2003, the plaintiff and the department entered into a "Stipulated Agreement" to which was appended a signed general release of liability (release). The release purported to preclude all causes of action alleging violations of the plaintiff's federal and state constitutional rights, and her rights arising under federal and state laws against the department and any present or former officers, agents or employees of the department.

Several months later, on April 12, 2004, the plaintiff commenced this action against the defendant, claiming defamation, intentional infliction of emotional distress and negligent infliction of emotional distress caused by the statements that he made in the chronology and the response. In response, on July 20, 2005, the defendant filed a motion for summary judgment against the plaintiff, asserting that her claims were barred by the terms of the release executed in the prior federal litigation, and that he was absolutely privileged, or had a qualified privilege, to publish the allegedly defamatory statements contained in the chronology and the response. The plaintiff filed an objection, with supporting evidence and a memorandum of law, claiming that genuine

---

[3] The plaintiff's attorney, the same one representing her in this appeal, deposed the defendant in the federal litigation. According to the defendant, during this federal deposition, he gave the plaintiff's attorney copies of the chronology and response.

issues of material fact existed with respect to the defendant's claims that statements made in the chronology and response were absolutely privileged, protected by a qualified privilege and protected by the release. The court heard argument and issued its memorandum of decision on March 21, 2006, granting the defendant's motion, finding that the absolute privilege, the qualified privilege and the release barred the plaintiff's claims. This appeal followed.

The plaintiff claims on appeal that the court improperly rendered summary judgment in favor of the defendant, arguing that the defendant's statements are not absolutely privileged because they were not made in the context of a "judicial or quasi-judicial proceeding." We disagree with the plaintiff's assertion.

Because the court's decision on a motion for summary judgment is a legal determination, our review on appeal is plenary. *Heussner* v. *Day, Berry & Howard, LLP*, 94 Conn. App. 569, 572–73, 893 A.2d 486, cert. denied, 278 Conn. 912, 899 A.2d 38 (2006). "The law governing summary judgment and the accompanying standard of review are well settled. Practice Book § [17-49] requires that judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. A material fact is a fact that will make a difference in the result of the case. . . . The facts at issue are those alleged in the pleadings. . . .

"In seeking summary judgment, it is the movant who has the burden of showing the nonexistence of any issue of fact. The courts are in entire agreement that the moving party for summary judgment has the burden of showing the absence of any genuine issue as to all the material facts, which, under applicable principles of substantive law, entitle him to judgment as a matter

of law. The courts hold the movant to a strict standard. To satisfy his burden the movant must make a showing that it is quite clear what the truth is, and that excludes any real doubt as to the existence of any genuine issue of material fact. . . . As the burden of proof is on the movant, the evidence must be viewed in the light most favorable to the opponent. . . .

"It is frequently stated in Connecticut's case law that, pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of a genuine issue of material fact. . . . [T]ypically [d]emonstrating a genuine issue requires a showing of evidentiary facts or substantial evidence outside the pleadings from which material facts alleged in the pleadings can be warrantably inferred. . . . Moreover, [t]o establish the existence of a material fact, it is not enough for the party opposing summary judgment merely to assert the existence of a disputed issue. . . . Such assertions are insufficient regardless of whether they are contained in a complaint or a brief. . . . Further, unadmitted allegations in the pleadings do not constitute proof of the existence of a genuine issue as to any material fact." (Internal quotation marks omitted.) *DaGraca* v. *Kowalsky Bros., Inc.*, 100 Conn. App. 781, 785–86, 919 A.2d 525, cert. denied, 283 Conn. 904, 927 A.2d 917 (2007).

The plaintiff claims that the court improperly determined that the defendant's statements in the chronology and the response are entitled to an absolute privilege because they were made in connection with a "judicial proceeding." We agree with the trial court.

In Connecticut, the doctrine of absolute privilege is a long-standing rule that protects otherwise defamatory statements made in the context of judicial or quasi-judicial proceedings. See *Petyan* v. *Ellis*, 200 Conn. 243, 245–46, 510 A.2d 1337 (1986). "From the earliest times,

this state has recognized that the absolute privilege is to be extended for the protection of those participating in judicial proceedings and 'extends to judges, counsel and witnesses.' " *Magnan* v. *Anaconda Industries, Inc.*, 37 Conn. Sup. 38, 43, 429 A.2d 492 (1980), rev'd on other grounds, 193 Conn. 558, 479 A.2d 781 (1984). "There is a long-standing common law rule that communications uttered or published in the course of the judicial proceedings are absolutely privileged so long as they are in some way pertinent to the subject of the controversy. . . . The effect of an absolute privilege is that damages cannot be recovered for a defamatory statement even if it is published falsely or maliciously. . . . The policy underlying the privilege is that in certain situations the public interest in having people speak freely outweighs the risk that individuals will occasionally abuse the privilege by making false and malicious statements. . . .

"The judicial proceeding to which the immunity attaches has not been defined very exactly. It includes any hearing before a tribunal which performs a judicial function, ex parte or otherwise, and whether the hearing is public or not. . . . It extends also to the proceedings of many administrative officers, such as boards and commissions, so far as they have powers of discretion in applying the law to the facts which are regarded as judicial or quasi-judicial in character." (Citations omitted; internal quotation marks omitted.) *Petyan* v. *Ellis*, supra, 200 Conn. 245–46.

The "common law absolute privilege itself is not confined to the testimony of a witness but extends to any statement made in the course of a judicial proceeding, whether or not given under oath, so long as it is pertinent to the controversy. Thus it applies to statements made in pleadings or other documents prepared in connection with a court proceeding." (Citation omitted.)

Id., 251–52. "A party to a private litigation . . . is absolutely privileged to publish defamatory matter concerning another in communications preliminary to a proposed judicial proceeding, or in the institution of or during the course and as part of, a judicial proceeding in which he participates, if the matter has some relation to the proceeding." 3 Restatement (Second), Torts § 587 (1977).

In *Petyan*, our Supreme Court held that an employer's statements were privileged when they concerned the employer's reasons for discharging the plaintiff from her employment. *Petyan* v. *Ellis*, supra, 200 Conn. 255. There, the former employer was asked to complete a " 'fact-finding supplement' " addressing the reasons that she terminated the plaintiff's employment. Id., 245. The court concluded that the statements were absolutely privileged because the statements were "pertinent to the purposes of the [unemployment compensation] hearing and [were] communication[s] elicited in connection with and made during an administrative proceeding . . . ." Id., 250. Similarly, the statements at issue in this case were pertinent to the purpose of the pending litigation, a failure to promote claim, and were or constituted communications in response to the plaintiff's claims that she was not getting work because the defendant was not giving her any work.

Despite the precedent set forth in *Petyan*, the plaintiff claims the allegedly defamatory statements were not made in connection with a judicial proceeding because (1) the defendant was not a party to the federal litigation, (2) the defendant prepared the statements of his own volition and (3) the chronology and the response, as admitted by the defendant, were not relevant to the federal litigation.

First, although the plaintiff argues that the defendant was not a party to the federal litigation, he was her

supervisor at the time she initiated her federal lawsuit and most likely would have been a witness if the case had proceeded to trial. Her failure to promote claim would have required testimony from her supervisor to describe the plaintiff's work history and the reasons why she should or should not have been promoted.[4]

Addressing the plaintiff's second and third assertions, although the defendant was asked to respond orally to the accusations and never was directly asked to prepare written statements for the federal litigation, it can be inferred from his deposition testimony, and his actions, that he prepared them in anticipation of the pending federal litigation. As to the chronology, during his deposition, when asked what prompted him to make the chronology, the defendant responded that after he was informed by Radikas about the plaintiff's allegations that "she wasn't doing her work because her supervisor . . . did not give her work," he responded orally to this claim, and then later decided to respond to this charge by writing and explaining the entire history between the plaintiff and himself.[5] This indicates that if not for the call from Radikas, the defendant would not have written the chronology. It is clear from the defendant's deposition testimony that he wanted to respond to the plaintiff's allegations more clearly, and the best way

---

[4] As the defendant argues, he most likely would have been called to testify in the federal action as to why the plaintiff was not promoted, especially in light of the evidence that during that time period, he had given her glowing job evaluations, even rating her as "excellent" on some of the job performance measures. Therefore, he would have been a key witness in her failure to promote claim.

[5] The defendant stated during his deposition: "I had to clear my name based on this charge and respond to this charge. I felt the best way to do it would be to do it in writing and explain the whole history. . . . The implication, to me, sounds like I was part of some type of conspiracy, somebody who would hurt [the plaintiff], and I had encouraged her for many years, and I was shocked by it. I was so shocked that after I responded verbally to [Radikas] . . . I don't know how much clearer I can be. And after I thought about it, I said, my verbal response is not enough."

he knew how to do so was in writing. The defendant explained that for the past twenty-six years with the department, he has been "writing things and clarifying things so people will understand a situation" and, in making the chronology, was just adhering to his style developed over his long tenure with the department. Moreover, he gave the chronology to only the "key people who knew of t[he] charge."[6] Thus, it is clear that the defendant created the chronology to provide his superiors directly involved in the federal litigation with information to assist in the defense of the case. Therefore, the statements in the chronology are absolutely privileged because they were made in connection with the federal litigation.

As for the response, the defendant stated, in a deposition, that "[t]his was done specifically to hand over to whoever was working on [the] case so they would have this information to use as they will for the case." The court concluded that the statements in the response and chronology were prepared by the defendant in "connection with the federal litigation." We agree. Therefore, because the defendant's allegedly defamatory statements are absolutely privileged, there is no genuine issue of material fact as to the plaintiff's defamation claim.

The plaintiff also claims that the court improperly concluded that her intentional infliction of emotional distress claim was barred. We disagree. In *Petyan*, our Supreme Court relied on the Restatement of Torts (Second) to conclude that conduct that "would be otherwise

---

[6] Because the defendant shared the chronology with only four people involved in the federal litigation, the defendant has not lost the absolute privilege afforded to these statements. See *McManus* v. *Sweeney*, 78 Conn. App. 327, 335–36, 827 A.2d 708 (2003) ("In determining whether an occasion is absolutely privileged, the pivotal factor is frequently to whom the matter is published. . . . The privilege may be lost by unnecessary or unreasonable publication to one for whom the occasion is not privileged." [Internal quotation marks omitted.]).

extreme and outrageous, may be privileged under the circumstances." *Petyan* v. *Ellis*, supra, 200 Conn. 254. The *Petyan* court concluded that because the defendant had an absolute privilege, the plaintiff's intentional infliction of emotional distress claim was barred.[7] Id., 254–55. Thus, in this case, because the defendant's statements are absolutely privileged, the plaintiff's intentional infliction of emotional distress claim likewise fails.

Accordingly, because the court correctly determined that the defendant's statements were protected by an absolute privilege, it properly granted the defendant's motion for summary judgment as to the plaintiff's claims.

The judgment is affirmed.

In this opinion the other judges concurred.

---

[7] See *Petyan* v. *Ellis*, supra, 200 Conn. 255 ("[s]ince the defendant had an absolute privilege to state her reasons for the termination of the plaintiff's employment in the 'fact-finding supplement' solicited by the employment security division, she was exercising her legal right in a permissible fashion and cannot be held liable for the intentional infliction of emotional distress").