PHILIP E. LEFEBVRE *v.* JONI ZARKA ET AL.
(AC 28374)

DiPentima, Lavine and Hennessy, Js.

Argued October 18, 2007—officially released February 26, 2008

*John R. Williams*, for the appellant-appellee (plaintiff).

*William J. Melley III*, for the appellees-appellants (named defendant et al.).

*Joseph V. Meaney, Jr.*, for the appellee-appellant (defendant Adriana Almada).

*Opinion*

DiPENTIMA, J. The plaintiff, Philip E. Lefebvre, appeals from the judgment of the trial court rendered following the granting of motions for summary judgment in favor of the defendants, Joni Zarka, Alexander Zarka and Adriana Almada. On appeal, the plaintiff claims that the court improperly granted the motions for summary judgment because disputed issues of material fact exist. We affirm the judgment of the trial court.

The following facts are undisputed and relevant to the claims on appeal. On November 22, 2001, Almada and Alexander Zarka, at the time, ages thirteen and

eleven, respectively, were playing a game called "doorbell ditch," which involved ringing the plaintiff's doorbell and running away. After the children had rung the plaintiff's doorbell and had run away twice, the plaintiff decided to cross the street to a neighbor's property and wait for the children to repeat the prank. After waiting several minutes, the plaintiff saw Almada approach his door on the side porch and ring the doorbell. The plaintiff then crossed the street toward his house and crossed his front lawn, telling Almada to wait there. After ringing the doorbell, Almada stepped off the side porch and started to run, moving toward Alexander Zarka, who was standing on the street. As the plaintiff was crossing his lawn and Almada was running away, the two collided, and both of them landed on the ground.

The plaintiff and Almada then stood up, and the plaintiff took hold of Almada's wrist, an action which Almada initially resisted. The plaintiff led Almada up the side porch steps, still holding onto her wrist with her arm behind her at the small of her back. They entered the plaintiff's kitchen and the plaintiff continued to hold onto Almada's wrist until her aunt, Joni Zarka, arrived. The plaintiff and Joni Zarka exchanged words about what had happened, and then Almada left with Joni Zarka and a man who had accompanied Joni Zarka to the house.

After they left, the plaintiff called the police because he was concerned that Joni Zarka and the man with her had accused him of assault. A police officer responded and, after listening to the plaintiff's description of the events, told him that either he could file a formal complaint or the officer could make her statement that the event had happened but that the parties had apparently resolved the matter. The plaintiff agreed to the latter approach.

The next day, Joni Zarka called the police, complaining that the plaintiff had assaulted and unlawfully

restrained Almada. Officer Patrick Smith of the Farmington police department responded to the call and interviewed Joni Zarka, Alexander Zarka and Almada about the incident. Almada also provided an affidavit about the incident.

Smith next proceeded to the plaintiff's residence. On the way to the plaintiff's door, Smith observed a bracelet on the plaintiff's lawn. The bracelet matched the description of the bracelet that Almada said had broken and fallen off when she attempted to free herself from the plaintiff's grip. Smith marked the location of the evidence and took photographs of the area. Smith then interviewed the plaintiff and his wife. The plaintiff also provided Smith with an affidavit. Two days later, the plaintiff left a three page letter at the police department, further explaining his actions.

On the basis of all the statements, both oral and written, by the individuals involved, Smith determined that there was probable cause to apply for an arrest warrant for the plaintiff. On November 30, 2001, the plaintiff was charged with assault in the third degree in violation of General Statutes § 53a-61, unlawful restraint in the second degree in violation of General Statutes § 53a-96, and disorderly conduct in violation of General Statutes § 53a-182. The charges against the plaintiff were nolled by the state on February 24, 2003.

In September, 2003, the plaintiff filed an action against the defendants. By amended complaint filed May 19, 2004, the plaintiff alleged malicious prosecution in counts one through three against Joni Zarka, Alexander Zarka and Almada, respectively. In count four, the plaintiff alleged that Almada assaulted him during the incident at his residence.

After the completion of extensive discovery, the Zarkas moved for summary judgment on counts one and two on June 16, 2006, and Almada moved for summary

judgment on counts three and four on June 27, 2006. As to the malicious prosecution counts, the defendants moved for summary judgment on the ground that the plaintiff could not establish, inter alia, that the defendants had initiated or procured the institution of criminal proceedings against the plaintiff. Almada additionally sought summary judgment on the assault count on the ground that the plaintiff could not establish the requisite element of intent. On July 19, 2006, the plaintiff filed a memorandum of law with an exhibit in opposition to the motions. On November 30, 2006, the court granted the defendants' motions for summary judgment. This appeal followed. Additional facts will be set forth as necessary.

We begin by setting forth the appropriate standard of review. "Practice Book § 17-49 provides that summary judgment shall be rendered forthwith if the pleadings, affidavits and any other proof submitted show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. In deciding a motion for summary judgment, the trial court must view the evidence in the light most favorable to the nonmoving party. . . . The party moving for summary judgment has the burden of showing the absence of any genuine issue of material fact and that the party is, therefore, entitled to judgment as a matter of law. . . . The test is whether the party moving for summary judgment would be entitled to a directed verdict on the same facts. . . . Our review of the trial court's decision to grant the defendant's motion for summary judgment is plenary." (Internal quotation marks omitted.) *Reardon* v. *Windswept Farm, LLC*, 280 Conn. 153, 158, 905 A.2d 1156 (2006).

"It is frequently stated in Connecticut's case law that, pursuant to Practice Book §§ 17-45 and 17-46, a party opposing a summary judgment motion must provide an evidentiary foundation to demonstrate the existence of

a genuine issue of material fact. . . . [T]ypically [d]em-
onstrating a genuine issue requires a showing of eviden-
tiary facts or substantial evidence outside the pleadings
from which material facts alleged in the pleadings can
be warrantably inferred. . . . Moreover, [t]o establish
the existence of a material fact, it is not enough for the
party opposing summary judgment merely to assert the
existence of a disputed issue. . . . Such assertions are
insufficient regardless of whether they are contained
in a complaint or a brief. . . . Further, unadmitted alle-
gations in the pleadings do not constitute proof of the
existence of a genuine issue as to any material fact."
(Internal quotation marks omitted.) *McKinney* v. *Chap-
man*, 103 Conn. App. 446, 451, 929 A.2d 355, cert. denied,
284 Conn. 928, 934 A.2d 243 (2007).

The plaintiff claims that the court improperly granted
the motions for summary judgment because disputed
issues of material fact exist. Specifically, with regard
to the claim of malicious prosecution, the plaintiff
argues that there was an issue of material fact because
he asserted that it was the defendants' false accusations
that led to his arrest and subsequent criminal prosecu-
tion, and not, as the defendants argued, the plaintiff's
statements. In their memorandum of law in support of
their motion for summary judgment, the defendants
asserted that the plaintiff was not able to establish the
first element of malicious prosecution regarding the
initiation or procurement of the institution of criminal
proceedings against him.[1] We agree with the defendants.

Malicious prosecution is a tort arising out of a crimi-
nal complaint that is "intended to protect an individual's
interest in freedom from unjustifiable and unreasonable
litigation . . . ." (Internal quotation marks omitted.)
*Falls Church Group, Ltd.* v. *Tyler, Cooper & Alcorn,*

---

[1] In her motion for summary judgment, Almada adopted the Zarkas' memo-
randum of law regarding the malicious prosecution counts.

*LLP*, 281 Conn. 84, 99, 912 A.2d 1019 (2007). "An action for malicious prosecution against a private person requires a plaintiff to prove that: (1) the defendant initiated or procured the institution of criminal proceedings against the plaintiff; (2) the criminal proceedings have terminated in favor of the plaintiff; (3) the defendant acted without probable cause; and (4) the defendant acted with malice, primarily for a purpose other than that of bringing an offender to justice." *McHale* v. *W.B.S. Corp.*, 187 Conn. 444, 447, 446 A.2d 815 (1982).

"The policy of encouraging private citizens to assist in law enforcement is vindicated, in the law of malicious prosecution, by providing a limited immunity in the form of the first element that the plaintiff must prove to maintain his cause of action. A private person can be said to have initiated a criminal proceeding if he has insisted that the plaintiff should be prosecuted, that is, if he has brought pressure of any kind to bear upon the public officer's decision to commence the prosecution. . . . But a private person has not initiated a criminal proceeding if he has undertaken no more than to provide potentially incriminating information to a public officer. In such a case, if the defendant has made a full and truthful disclosure and has left the decision to prosecute entirely in the hands of the public officer, he cannot be held liable for malicious prosecution." (Citations omitted.) Id., 448. "A person is deemed to have initiated a proceeding if his direction or request, or pressure of any kind by him, was the determining factor in the officer's decision to commence the prosecution." *Zenik* v. *O'Brien*, 137 Conn. 592, 596, 79 A.2d 769 (1951).[2]

---

[2] Though the terms "procure" and "initiate" are not synonymous, our case law does not elucidate the legal distinction. The Restatement (Second) of Torts distinguishes between the two terms and states: "A person who does not himself initiate criminal proceedings may procure their institution in one of two ways: (1) by inducing a third person, either a private person or a public prosecutor, to initiate them, or (2) by prevailing upon a public official to institute them by filing an information. . . . The giving of the

The defendants supported their motions for summary judgment by providing statements given to the police by the plaintiff and the defendants. In addition, the defendants offered excerpts from Smith's deposition and from the deposition of Christopher A. Pelosi, an assistant state's attorney. In his deposition, Smith testified that when responding to a complaint, he always asks a complainant if he or she would like the matter investigated and if the complainant would be willing to make a statement. Smith testified that, in response to this question, Joni Zarka stated that she would be willing to give a statement but that she did not make a specific request for any action. Smith also testified that his decision to seek the charges against the plaintiff was based largely on the plaintiff's statements regarding the incident. Pelosi testified at his deposition that some of the plaintiff's statements raised the issue of criminal conduct and that he would have treated those statements as admissions to at least some of the charges had the underlying charges gone to trial. Pelosi also testified that despite entering a nolle prosequi on the charges, he had a good faith belief that there was probable cause to prosecute.

In order to prevail on a claim of malicious prosecution, the plaintiff must prove, inter alia, that the defendants initiated or procured the institution of the criminal proceedings against the plaintiff. To survive this motion for summary judgment, the plaintiff would have had to demonstrate the existence of a genuine issue of material fact with regard to this element. The plaintiff, in his brief in opposition to the motion for summary judgment, however, did not argue that the

information or the making of the accusation, however, does not constitute a procurement of the proceedings that the third person initiates if it is left to the uncontrolled choice of the third person to bring the proceedings or not as he may see fit." 3 Restatement (Second), Torts § 653, comment (d) (1977). We note, however, that the plaintiff does not raise as an issue any distinction between these terms.

defendants had insisted that he be prosecuted or that they had brought pressure of any kind to bear on the public officers involved. The plaintiff also did not argue that the defendants did more than provide potentially incriminating information to a public officer. The plaintiff simply asserted that the information in the arrest warrant application was based on "materially false statements" made by the defendants, and thus, they had not made full and truthful disclosures. The only support for his opposition to the motion for summary judgment that the plaintiff offered was the arrest warrant application.[3]

"It is not enough . . . for the opposing party merely to assert the existence of such a disputed issue. . . . The existence of the genuine issue of material fact must be demonstrated by counteraffidavits and concrete evidence. . . . If the affidavits and the other supporting documents are inadequate, then the court is justified in granting the summary judgment, assuming that the movant has met his burden of proof. . . . When a party files a motion for summary judgment and there [are]

---

[3] On appeal, the plaintiff referenced in his opposition brief an affidavit in which he purportedly attested that he "was born with two club feet and is physically incapable of performing the actions attributed to him by the defendants." This affidavit, however, is not in the file and does not appear to have been before the court on the motion for summary judgment. Almada also remarked on its absence in her reply to the plaintiff's opposition brief. Moreover, this assertion is in contradiction to some of the statements made by the plaintiff himself to the police.

In his sworn written statement to the police, the plaintiff wrote: "As this kid was walking down my steps, I began to run to intercept the kid. As I got closer, the smaller child shouted to the one on my side porch. The taller child began to run faster (apparently) as I arrived at the walkway about 3 feet from my porch. The child who rang my doorbell and I collided head-on and both fell to the ground. (Her head hit my jaw, which is swollen today.) I stood up first and when she (at this point, I realized it was a girl.) stood up, I held her wrist. I asked her if she thought this was fun. She squirmed and I put her wrist behind the small of her back. From this point on, she did not squirm or resist me, so I simply held her wrist (somewhat loosely) behind her back."

no contradictory affidavits, the court properly [decides] the motion by looking only to the sufficiency of the [movant's] affidavits and other proof." (Citations omitted; internal quotation marks omitted.) *Mozeleski* v. *Thomas*, 76 Conn. App. 287, 290, 818 A.2d 893, cert. denied, 264 Conn. 904, 823 A.2d 1221 (2003).

As movants for summary judgment, the defendants produced evidence to show that they did not initiate or procure the institution of the criminal proceedings. The plaintiff did not contest this evidence, nor did he produce any evidence to the contrary. The one document that the plaintiff supplied in support of his opposition to the motion for summary judgment, the arrest warrant application, did not contain any facts regarding whether the defendants had applied any pressure on the public officials to prosecute the plaintiff or whether anything they had done was the determining factor in the officials' decision to commence prosecution. See *Zenik* v. *O'Brien*, supra, 137 Conn. 596. The plaintiff merely asserted in his brief that the defendants had made false statements but offered no admissible evidence in support of that assertion and provided no counteraffidavits as required. See *Mozeleski* v. *Thomas*, supra, 76 Conn. App. 290. Thus, the plaintiff has not met his burden as the party opposing summary judgment, and we conclude that the court properly rendered summary judgment.[4]

The plaintiff also claims that summary judgment should not have been rendered with regard to count

[1] The defendants filed cross appeals, arguing that the court improperly concluded that the plaintiff's criminal charges terminated in his favor when the state nolled the charges against him. Because the defendants were the prevailing parties, and therefore nonaggrieved parties, their cross appeals must be dismissed. We treat their claim, however, as an alternate ground for affirmance. See *Bower* v. *D'Onfro*, 45 Conn. App. 543, 547 n.5, 696 A.2d 1285 (1997). Because we affirm the judgment on other grounds, however, we do not reach this claim.

four of his complaint, which alleged assault by Almada. The plaintiff, however, focused his argument on why summary judgment was improper on the malicious prosecution counts and provides only cursory mention of the assault count. This scant treatment without proper analysis constitutes inadequate briefing on this claim, and we therefore decline to afford it review.[5]

The judgment is affirmed and the cross appeals are dismissed.

In this opinion the other judges concurred.

---

[5] "[W]e are not required to review issues that have been improperly presented to this court through an inadequate brief. . . . Analysis, rather than mere abstract assertion, is required in order to avoid abandoning an issue by failure to brief the issue properly. . . . Where a claim is asserted in the statement of issues but thereafter receives only cursory attention in the brief without substantive discussion or citation of authorities, it is deemed to be abandoned." (Citation omitted; internal quotation marks omitted.) *Shore* v. *Haverson Architecture & Design, P.C.*, 92 Conn. App. 469, 479, 886 A.2d 837 (2005), cert. denied, 277 Conn. 907, 894 A.2d 988 (2006).

In its memorandum of decision, the court noted that the plaintiff did not respond to Almada's motion for summary judgment as to the count of battery, but because Almada, as the moving party, had the burden of showing that there was no genuine issue of material fact, the court properly addressed the adequacy of Almada's motion for summary judgment on this count.